UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF THE MIDWEST,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>SAMUEL GENE MCNEELEY and SUSAN HENDRIX,<br><br>    Defendants and Counter-Claimants. | Case No. 21-10171<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART CITIZENS' MOTION FOR SUMMARY JUDGMENT [23]**

In April 2017, Dr. Samuel McNeeley and his wife, Dr. Susan Hendrix, were walking in Peoria, Arizona, when—tragically—a car hit McNeeley. McNeeley sustained injuries that ended his career as a physician and required extensive medical and attendant care.

In addition to receiving $25,000 from the insurer of the car that hit him, McNeeley sought coverage from two additional insurers who he held policies with at the time of the accident: Citizens Insurance Company of the Midwest and Allstate Insurance Company. Those policies provided underinsured-motorist coverage to McNeeley, among other benefits. After some back and forth between the two insurers, McNeeley signed a settlement with Citizens. That settlement paid McNeeley $975,000 in exchange for releasing Citizens from liability for any other claims related

to the incident (with one exception). A couple of weeks later, McNeeley signed a similar settlement with Allstate, accepting $500,000 in exchange for a release.

But that was not the end of the matter. Citizens believes that under its insurance agreement with McNeeley, it was owed reimbursement once McNeeley received an additional $500,000 from Allstate. It also claims that McNeeley received Social Security disability benefits, which should have offset the wage-loss payments he received from Citizens. So almost three years after the settlements were signed, Citizens sued McNeeley and Hendrix in this Court for a declaratory judgment stating that Defendants must reimburse Citizens $500,000 for the settlement received from Allstate and must reimburse Citizens the amount of the disability benefits McNeeley allegedly received.[1] McNeeley and Hendrix counterclaimed for PIP benefits under the insurance contract and the Michigan No-Fault Act.

In time, Citizens filed a motion for summary judgment. (ECF No. 23.) For the following reasons, the Court GRANTS IN PART Citizens' motion for summary judgment. Citizens is not entitled to reimbursement under its policy or Michigan law.

---

[1] Citizens also asked for a declaratory judgment that Citizens "is entitled to reimbursement of personal injury protection benefits paid by it from Defendant McNeeley's recovery of bodily injury damages and Underinsured Motorist benefits[.]" (ECF No. 1, PageID.18.) It is unclear if this claim is distinct from Citizens' claim that Defendants owe $500,000 in reimbursement. Regardless, Citizens makes no mention of any separate reimbursement owed under this claim. It only asks for $500,000 from the Allstate settlement, for $31,113.60 from Social Security disability payments, that Defendants' counterclaim be dismissed with prejudice, and that it receive attorney's fees, interest, and costs associated with the litigation. (ECF No. 23, PageID.160.) So the Court finds no basis to grant relief in excess of what is requested in Citizens' motion.

But Defendants' counterclaim will be dismissed without prejudice because it is unripe.

I.

A.

As this case primarily involves interpretation of an insurance contract, the record is sparse. However, there are a few factual details relevant to the issues before the Court.

On April 23, 2017, McNeeley was in Peoria, Arizona when he was hit by a car as a pedestrian. He suffered injuries that ended his career as a physician.

At the time of the accident, McNeeley was covered by two insurance policies: one issued by Citizens with a limit of $1,000,000 and one issued by Allstate with a limit of $500,000. (ECF Nos. 23-7, 26-4.) Both policies are for automobile insurance and provide underinsured-motorist benefits in the event the insureds—McNeeley and his wife Hendrix—suffer bodily injuries and the responsible party does not have sufficient insurance to cover the damages. The relevant provisions of those policies will be discussed in detail later in the Court's analysis. A third insurer, State Farm, insured the vehicle that struck McNeeley. A few months after the accident, State Farm paid McNeeley that policy's $25,000 limit to settle any claims against it. (ECF No. 23-6.)

Eventually, McNeeley signed settlements with the other two insurers as well. On January 15, 2018, McNeeley signed a settlement agreement and release where he accepted $975,000—seemingly the $1,000,000 policy limit less the $25,000 received

from State Farm— from Citizens in exchange for a complete (unilateral) release and discharge of Citizens "from any and all past, present, or future claims, causes of action, liability, damages, judgments, settlements, costs, attorney fees, expenses, extra-contractual or bad faith claims, insurance benefits (including Underinsured Motorist coverage), hospital/medical payments, liens, personal injuries, and any other relief of any kind whatsoever, based upon, arising out of or related to the incident, with the sole exception of the pending claim by Samuel McNeeley for Personal Injury Protections benefits under the Citizens Policy." (ECF No. 23-9, PageID.271.)

Shortly after, on February 1, 2018, McNeeley similarly settled claims against Allstate in exchange for the policy limit of $500,000. (ECF No. 23-10, PageID.276.)

**B.**

Some three years after these settlement agreements were signed, Citizens sued McNeeley and Hendrix, seeking a declaratory judgment that it is entitled to $500,000 in reimbursement for the amount Defendants received from Allstate and that it is entitled to additional reimbursement of wage-loss benefits to the extent McNeeley received Social Security disability benefits. (ECF No. 1.) McNeeley and Hendrix filed a counterclaim against Citizens for refusing to pay PIP no-fault benefits owed under the insurance policy and Michigan's No-Fault Act. (ECF No. 7.)

After engaging in discovery, Citizens moved for summary judgment on all claims and the counterclaim. (ECF No. 23.) That motion is fully briefed. Given the

4

adequate briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Because Citizens seeks summary judgment on claims for which it has the burden of persuasion, its showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [it]." *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). In making this determination, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to Defendants. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On the counterclaim, Citizens is entitled to summary judgment only if no reasonable jury could find in favor of Defendants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### A. Underinsured-Motorist Coverage

As discussed, Citizens' position is that, after Defendants' settlement with Allstate, Defendants wrongfully retained $500,000 owed to Citizens under their insurance contract.

Both parties agree that Michigan law governs how to interpret Citizens' policy. In Michigan, an insurance contract is generally interpreted like any other contract.

5

*Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). The meaning of a contract is a question of law. *Wilkie v. Auto–Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003).

In support of its position, Citizens seeks to enforce two provisions in Defendants' insurance contract. The first provision falls under the "Other Insurance" section of the underinsured-motorists coverage. (ECF No. 23-7, PageID.246.) It states, "Any recovery for damages for 'bodily injury' sustained by an 'Insured' may equal but not exceed the higher of the applicable limit for any one vehicle under this Insurance or any other insurance." (*Id.* at PageID.248.) In other words, Defendants are not permitted to "stack" the policy limits for both the Citizens and Allstate policies under the Citizens contract. Instead, as the Citizens policy has the higher limit, Defendants are entitled to a maximum total recovery of $1,000,000. Subtracting the amount they received from State Farm, Citizens says that Defendants may recoup no more than $975,000 from Citizens and Allstate combined.

The second provision Citizens seeks to enforce states, "If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall 1. Hold in trust for us the proceeds of the recovery; and 2. Reimburse us to the extent of our payment." (*Id.* at PageID.236.) So, says Citizens, since Defendants were only entitled to $975,000 under the policy, they must reimburse Citizens for any payment they received from Allstate as that amount was in excess of the $975,000 paid to them by Citizens.

6

When interpreted alone, these two provisions seem to support Citizens' position. But when interpreted alongside the rest of the "Other Insurance" provisions of Defendants' underinsured-motorists coverage, the argument fails.

Before the Court explains its conclusion, a brief explanation of the relevant insurance law is in order. In general, there are three types of insurance policies: "primary coverage," excess other insurance, and "true" excess insurance. *State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 398 F. App'x 128, 132 (6th Cir. 2010) (citing *Bosco v. Bauermeister*, 571 N.W.2d 509, 519 (Mich. 1997)). To oversimplify a bit, the idea is that a policy that is intended to cover a risk on a "primary" basis should pay to its policy limit *before* insurance that is written to be "excess" pays a single penny. Many insurance policies contain standard other-insurance clauses, which "vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. Co. v. American Home Assur. Co.*, 514 N.W.2d 113, 115 (Mich. 1994). Typically, other-insurance clauses come in three flavors: pro-rata clauses where "the language creates a formula for establishing the liability of the insurer when other, collectible insurance exists on a proportionate basis[;]" excess clauses, which show "the insurer's intent that the policy only afford secondary coverage when the same loss is covered by 'other insurance,'" and escape or no-liability clauses, under which "there shall be no liability if the risk is covered by other insurance." *See St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d at 115–16. Under Michigan law, when faced with competing excess and pro-rata other-insurance clauses, the policy with the pro-rata clause is treated as

primary and the policy with the excess clause is treated as excess insurance. *St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d at 120–21.

Here, Citizens relied on one such other-insurance provision to limit its liability to Defendants—the total recovery limit. But there are two additional provisions in the "Other Insurance" section that Citizens ignored. One establishes the "priorities of recovery," or the order in which a particular type of applicable insurance is to pay for the injury. The clause states, "First[:] The Uninsured/Underinsured Motorists Coverage applicable to the vehicle the 'insured' was occupying at the time of the accident. Second[:] Any other policy affording Uninsured/Underinsured Motorists Coverage to the 'insured' as a named insured or family member." (ECF No. 23-7, PageID.248.) The second relevant provision is a pro-rata clause that provides that Citizens will only pay "the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority." (*Id.*) The "same level of priority" seemingly refers to the "priorities of recovery" provision. So it appears that the Citizens policy requires determining the level of priority for each policy per the stated schedule, and if they are in the same level, Citizens agreed to pay only a proportional share of the recovery based on the respective policy limits.

Applying those provisions to the facts here, both the Citizens and Allstate policies are in the second tier as McNeeley was not "occupying" a vehicle at the time of the accident. (*See* ECF No. 23-7, PageID.248.) In this circumstance, Citizens agreed to pay "the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority"—or a pro-rata share of the liability.

8

However, that does not complete the analysis. Allstate's policy provides for excess coverage in this situation: "If the injured person was struck as a pedestrian, or in, on, getting into or out of a vehicle which is insured for this coverage under another policy, this coverage will be excess." (ECF No. 26-4, PageID.381.) So the rule in *St. Paul Fire & Marine Insurance Company* applies. Because Citizens' underinsured-motorist policy calls for a pro-rata division of liability, and Allstate's provides for excess coverage only, "[t]he excess clause in the [Allstate] policy . . . is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits." *St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d at 120. Citizens' pro-rata clause is not triggered because "policies containing a pro-rata clause are effective only when 'other valid and collectible' primary insurance is available" and "a policy containing an excess 'other insurance' clause is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro-rata clause." *Id.* at 120–21. Indeed, Citizens' other-insurance provision specifies that the other-insurance provisions are triggered "[i]f there is other applicable insurance available under more than one policy." But Michigan law does not treat a policy with an excess clause—like Allstate's—as "applicable" insurance. (*See* ECF No. 23-7, PageID.248.) In other words, as the primary insurer, Citizens must pay up to its policy limit—which is $975,000 after subtracting Defendants' recovery from State Farm—before Allstate pays anything. So Defendants are entitled to retain $975,000 from Citizens separate and apart from Allstate.

9

In reply, Citizens argues that "there is nothing in either the Citizens policy or Allstate policy that absolves the McNeeleys' contractual obligation to reimburse Citizens and hold moneys recovered from other sources in trust." (ECF No. 27, PageID.419.) This argument is unpersuasive. For one, the reimbursement provision cannot be read to broadly apply to any damages that an insured receives from another. If that was the case, the pro-rata other-insurance provision would be read out of the policy. *See Smith v. Smith*, 823 N.W.2d 114, 116 (2011) ("When a court interprets a contract, the entire contract must be read and construed as a whole. All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible."). And the reimbursement provision concerns Citizens' "right to recover payment," which suggests that Citizens must have a legal right to the money before an individual is required to reimburse it. (ECF No. 23-7, PageID.236.) The Court finds no such right here. So while a contractual provision does not "absolve" Defendants from reimbursing Citizens, the interpretation of the policies under Michigan law does.

Citizens also places considerable weight on the order-of-priorities clause, stating that both the Citizens and Allstate policies occupy the second level of priority per the contract. (ECF No. 27, PageID.419.) That may be true, but nothing in that provision indicates that Citizens intended its policy to be excess over a policy that is in the same tier. Instead, it provides for pro-rata coverage in that circumstance. And, as explained, Michigan law provides that an excess policy like Allstate's will not trigger a pro-rata clause in another policy. So despite both policies being in the second

10

tier under the Citizens contract, Allstate's undisputedly contains an excess clause while Citizens' contains a pro-rata clause. Michigan law reconciles the two by triggering only the excess clause and treating the insurer with the pro-rata clause as primary.

Finally, though Citizens does not make this argument explicitly in reply, the Court addresses a concern Citizens may have with its interpretation. As described, the Citizens' policy seeks to limit "[a]ny recovery for damages for 'bodily injury' sustained by an 'insured'" to the "higher of the applicable limit for any one vehicle under this insurance or any other insurance." (ECF No. 23-7, PageID.248.) It is true that under the Court's application of Michigan law, this provision will not limit Defendants' recovery to Citizens' $1,000,000 policy limit. But the Court's interpretation does not read this provision out of the contract as a whole. For example, this provision may be given effect if Citizens is entitled to a pro-rata division of liability with another insurer. Or it may be given effect if Citizens' policy is treated as excess to another insurer. And it seemingly was given effect here where the $25,000 from State Farm was used to reduce the total amount that could be recovered from Citizens. And similar to the reasoning in *St. Paul*, this part of the policy is only triggered when "there is other applicable insurance available under more than one policy," that does not include excess policies. So the Court clarifies that it is not ignoring the recovery-limit provision in making its decision, and its interpretation does not read that clause out of the contract. Put simply, the Citizens policy provides

11

for pro-rata coverage in this situation, while Allstate's provides for excess. Michigan law makes it so Allstate's clause is triggered while Citizens' is not.

In sum, to enforce these provisions in a cohesive way, the Court finds that Citizens was responsible for paying $975,000 to Defendants as the primary insurer before Allstate became responsible for paying a penny. Thus, Citizens is not entitled to reimbursement of any money Allstate paid Defendants.

### B. Wage-loss Payments

Citizens also contends that it overpaid wage-loss benefits to McNeeley.

Michigan law provides that "[b]enefits provided or required to be provided under the law of any state or federal government shall be subtracted from the personal protection insurance benefits otherwise payable[.]" Mich. Comp. Laws § 500.3109(1). While Social Security disability benefits are required to be subtracted under this statute, *Profit v. Citizens Ins. Co. of America*, 506 N.W.2d 514, 517 (Mich. 1993), Social Security retirement benefits are not, *Jarosz v. Detroit Auto. Inter-Insurance Exchange*, 345 N.W.2d 563, 581 (Mich. 1984).

Citizens offers an October 8, 2019 letter to McNeeley from the Social Security Administration as evidence that McNeeley received Social Security benefits. (ECF No. 23-2.) But this letter does not allow Citizens to meet its burden of showing that McNeeley received *disability* benefits as opposed to *retirement* benefits. The letter does not specify what kind of benefits were paid. And Citizens did not attempt to rebut or refute Defendants' assertion that this was retirement income or that McNeeley has reached 65 years of age. As no reasonable jury could rely on the letter

alone to conclude that McNeeley received benefits that should have been subtracted from the insurance benefits provided by Citizens, Citizens is not entitled to be reimbursed for those benefits.

### C. No-Fault Benefits

Defendants brought a counterclaim for breach of the insurance contract and violations of the Michigan No-Fault Act in response to Citizens' complaint. (ECF No. 7, PageID.40.) Defendants' counterclaim alleges that Citizens "refused to pay . . . for PIP No-Fault insurance benefits, including, but not limited to . . . medical care, prescriptions, wage loss, replacement services, attendant care services, and home modifications to accommodate his automobile accident-related disabilities." (*Id.* at PageID.43.)

However, Defendants now concede that "Citizens has been presently paying Dr. McNeeley's medical expenses. As such, Dr. McNeeley is not presently seeking any overdue medical care expenses." (ECF No. 26, PageID.314.) Citizens also "reinstated retroactively" McNeeley's attendant care expenses. (*Id.*) As to home modifications, "Dr. McNeel[e]y has not made any home modifications as he was seeking an agreement with Citizens in advance of incurring these significant expenses." (*Id.*) As such, "these claims . . . have not presently been declined by Citizens[.]" (*Id.* at PageID.315.)

As Defendants apparently admit, their counterclaim is unripe. Ripeness stems from Article III limitations on a federal court's jurisdiction. *See Doe v. Oberlin College*, 60 F.4th 345, 355 (6th Cir. 2023). "[A] claim is not ripe if it turns on 'contingent future

13

events that may not occur as anticipated, or indeed may not occur at all.'" *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting in part *Trump v. New York*, 141 S. Ct. 530, 535 (2020)). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Id.* (citations omitted). Citizens has not yet denied McNeeley's claims related to medical care, attendant care, or home modifications, and so based on what is before the Court, no PIP benefits owed under the policy or the No-Fault Act have been wrongfully withheld. As such, there is no present controversy for this Court to review—and there may not be one in the future either depending on the parties' conduct.

So the Court will dismiss the counterclaim without prejudice. *See Peters v. Fair*, 437 F.3d 1035, 1038 (6th Cir. 2005) (stating an unripe claim should be dismissed without prejudice).

### III.

In sum, the Court grants in small part Citizens' motion for summary judgment.

Read as a whole, the insurance contract between Defendants and Citizens provides that Citizens must share liability with other insurance—like Allstate—on a pro-rata basis, while Allstate's policy states it should be treated as excess in these circumstances. Thus, Michigan law provides that Citizens' policy is primary and Citizens must pay $975,000. As Citizens did not overpay under its policy, it is not entitled to any reimbursement of underinsured motorist benefits. And as no reasonable jury could find in favor of Citizens on its claim for reimbursement for

14

Social Security disability benefits, the motion for summary judgment is denied. As there is nothing further for the Court to adjudicate, the claims are dismissed.

Defendants' counterclaim is unripe and dismissed without prejudice.

A separate judgment will follow.

SO ORDERED.

Dated: July 27, 2023

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE